UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FREEDOM MORTGAGE CORPORATION,

                              Plaintiff,

            -against-

MECHELLE KING, NEW YORK CITY
ENVIRONMENTAL CONTROL BOARD, NEW
YORK CITY PARKING VIOLATIONS BUREAU,
and NEW YORK CITY TRANSIT
ADJUDICATION BUREAU,

                              Defendants.

**MEMORANDUM & ORDER
19-CV-4833 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court are Magistrate Judge Bloom's Report and Recommendation ("R&R") on Plaintiff's Motion for Default Judgment and Plaintiff's objections to that R&R. (*See* Mot. f. Default J. (Dkt. 16); April 28, 2020 R&R (Dkt. 20); Pl's. Objections to R&R (Dkt. 30).) For the reasons stated below, the R&R is ADOPTED in part.

## I.  BACKGROUND

Plaintiff Freedom Mortgage Corporation brings the instant foreclosure suit against Defendants Mechelle King, New York City Environmental Control Board, New York City Parking Violations Bureau, and New York City Transit Adjudication Bureau. (Compl. (Dkt. 1).) Plaintiff seeks to foreclose on a mortgage encumbering real property located at 110-48 176th Street, Jamaica, New York 11433 (the "Property") pursuant to New York Real Property Actions and Proceedings Law ("RPAPL") Article 13. (*Id.* ¶ 1.) Defendant King is the owner of the Property and the mortgagor. (*Id.* ¶¶ 3, 11.) Defendants New York City Environmental Control Board, New York City Parking Violations

Bureau, and New York City Transit Adjudication Bureau all possess liens on the Property. (*Id.* ¶¶ 4-6.)

Plaintiff alleges that in 2014 Defendant King executed and delivered a Note for $312,270.00 plus interest. (*Id.* ¶ 10.) To secure payment of the Note, King executed and delivered a Mortgage on the Property in an equal amount. (*Id.* ¶ 11.) The Mortgage was later assigned to Plaintiff Freedom Mortgage Corporation. (*Id.* ¶ 12.) On March 1, 2019, with the outstanding principal balance on the loan totaling $288,165.51, King "failed to make a payment in accordance with the terms of the Note and Mortgage." (*Id.* ¶¶ 13-14.)

Plaintiff filed the instant foreclosure suit on August 22, 2019. The Defendants failed to appear or otherwise defend the action, and the clerk entered default against all Defendants on November 13, 2019. (Dkt. 13.) Plaintiff moved for a default judgment on February 5, 2020, (Mot f. Default J.; Mem. in Support of Mot. f. Default Judgment (Dkt. 17)), and attached to its motion documents illustrating King's default on payments, the amounts due under the loan, and compliance with RPAPL §§ 1304 and 1306. (*See generally* Dkt. 18.)

On February 6, 2020, this court referred the motion for default judgment to Magistrate Judge Lois Bloom for an R&R. (February 6, 2020 Text Order Referring Mot.) Judge Bloom issued the annexed R&R on April 28, 2020, recommending that the court grant in part and deny in part Plaintiff's motion. (April 28, 2020 R&R at 1.) In particular, the R&R counseled entry of default judgment against Defendant King and an order of damages in the following amounts: $288,165.51 for the unpaid principal balance due on the Note; $11,512.50 for interest accrued on the Note from February 1, 2019 through December 5, 2019; $37.50 of interest per day from December 6, 2019 until the entry of judgment; $1,196.13 in late charges; and $760.00 in costs. (*Id.* at 12-13.) The R&R further recommended entry of default judgment

against Defendants New York City Environmental Control Board, New York City Parking Violations Bureau, and New York City Transit Adjudication Bureau to foreclose their interests in the property, as well as an order of foreclosure and sale of the Property. (*Id.* at 13.)

The R&R gave Plaintiff 14 days to file objections and supplements. (*See* Dkt. 20.) This deadline was repeatedly extended until Plaintiff filed objections on September 1, 2021. (Pl's. Objections to R&R.) That day, Plaintiff served its objections on the Defendants. (Dkt. 31.) On October 29, 2021, and then again on November 10, 2021, Plaintiff also served a "Notice to Mortgager/COVID Hardship Declaration" on Defendant King. (Dkts. 32, 33.)

The court now reviews the R&R and addresses Plaintiff's objections.

## II.  LEGAL STANDARD

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made" by a magistrate judge in an R&R. 28 U.S.C. § 636(b)(1)(C). Where a party timely and specifically objects, the court conducts a *de novo* review of the contested portions of the R&R. *Fischer v. Forrest*, 286 F. Supp. 3d 590, 601 (S.D.N.Y. 2018). "However, when a party makes only conclusory or general objections, or simply reiterates his original arguments, the court reviews the report and recommendation strictly for clear error." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 715 (S.D.N.Y. 2020).[1]

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

## III. DISCUSSION

### A.    Entitlement to Default Judgment

No party has objected to the portions of the R&R regarding Plaintiff's entitlement to a default judgment. (*See* R&R at 5-8.) The time to do so has passed. Therefore, the court reviews this portion of the R&R for clear error. *See Rubinstein & Assocs., PLLC v. Entrepreneur Media, Inc.*, 554 F. Supp. 3d 506, 510 (E.D.N.Y. 2021).

Footnote 4 references two questions regarding compliance with RPAPL §§ 1304 and 1306 that the Second Circuit certified to the New York Court of Appeals in 2020. (R&R at 5 n.4.) The two certified questions are as follows:

> (1) Where a foreclosure plaintiff seeks to establish compliance with RPAPL § 1304 through proof of a standard office mailing procedure, and the defendant both denies receipt and seeks to rebut the presumption of receipt by showing that the mailing procedure was not followed, what showing must the defendant make to render inadequate the plaintiff's proof of compliance with § 1304?

> (2) Where there are multiple borrowers on a single loan, does RPAPL § 1306 require that a lender's filing include information about all borrowers, or does § 1306 require only that a lender's filing include information about one borrower?

*CIT Bank N.A. v. Schiffman*, 948 F.3d 529, 538 (2d Cir. 2020). The Court of Appeals has since answered these questions, and the court will thus address the issues raised therein. *See CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550, 555-60 (2021). The first question does not bear on the current matter, as it involves a defendant showing noncompliance with RPAPL § 1304, *id.* at 555-58, and no Defendant has appeared to make such an argument here. As to the second question, the Court of Appeals found that the lender must only list one borrower on an RPAPL § 1306

notice. *Id.* at 559. Plaintiff's § 1306 filing here only lists one borrower, Mechelle King, (Thomas Aff. (Dkt. 18-6) at 34), which is sufficient to meet this statutory requirement.

Footnote 4 of the R&R is no longer applicable given the above-mentioned intervening decision, issued since the filing of the R&R. But this caselaw does not change the conclusion that Plaintiff complied with the requirements of RPAPL §§ 1304 and 1306. The court sees no other issues in this portion of the R&R. Accordingly, the R&R's findings regarding Plaintiff's entitlement to default judgment are ADOPTED in part.

### B. Damages

Plaintiff does object to the R&R's denial of certain amounts of damages. (Pl's. Objections to R&R ¶¶ 4-5.) The damages in question include $97.72 in late charges, $5,958.13 in unpaid tax disbursements, primary mortgage insurance/mortgage insurance premium ("PMI/MPI"), and property and preservation costs, and $140.00 in costs. (*Id.* ¶ 4.) The first two objections are specific and will be analyzed under a *de novo* standard. The objection regarding the $140.00 in costs is conclusory; the court will review this portion of the R&R for clear error.

The amount sought in the first objection, $97.72, represents the difference between the $1,293.85 in late charges that Plaintiff requested in its motion for default judgment and the $1,196.13 in late charges that the R&R recommended awarding. (Pl's. Statement of Damages (Dkt. 18-7) at 1; R&R at 10-11.) Magistrate Judge Bloom arrived at this amount using the "Late Charge Panel" document attached to Plaintiff's motion, which reflected outstanding late charges of $1,196.13 as of July 25, 2019. (*See* R&R at 10-11 (citing Thomas Aff. at 6-7).) Plaintiff argues that the remaining $97.72 in late charges "constitutes the sum of 4% of the overdue monthly payments," which totaled $2,508.48 as of July 25, 2019, and that this amount is reflected in Plaintiff's mortgage loan servicing business records. (Pl's. Objections to

R&R ¶ 4.)[2] This is incorrect. As an initial matter, 4% of $2,508.48 equals $103.33, not $97.72 as Plaintiff suggests. More importantly, however, the additional $97.72 in late charges that Plaintiff asks for is not reflected in the "Late Charge Panel Detail" document, which lists the total remaining balance of charges as $1,196.13. (Thomas Aff. at 6-8.) The court has summed the "Remaining Balance" column in this file, which reflects the total outstanding charges, and found that it equals $1,196.13 (*Id.*) Plaintiff has thus not presented any basis for the additional $97.72 in late charges.

Plaintiff next contends that it is entitled to $4,037.85 in tax disbursements, $1,820.18 in PMI/MIP disbursements, and $100.00 in property inspections/preservation disbursements. (Pl's. Objections to R&R ¶ 5.) It cites the Thomas Affidavit and "the business records that were submitted with the Thomas Affidavit" as support for these amounts, as well as provisions of the Mortgage to show its entitlement to these payments. (*Id.*)

Notwithstanding Plaintiff's right to collect such payments under the Mortgage, the court finds that Plaintiff has failed to provide sufficient documentation—such as invoices, receipts or other documentary proof—to substantiate its request. The documents attached to the Thomas Affidavit do not show evidence of specific payments for tax disbursements, mortgage insurance, or property inspection/preservation disbursements. (*See generally* Thomas Aff. at 4-34.) Bare assertions in the Thomas Affidavit that Plaintiff is owed these amounts are, on their own, conclusory allegations that are insufficient to support damages. *See, e.g., OneWest Bank, N.A. v. Vaval*, No. 14-CV-3437 (CBA) (PK), 2016 WL 3945342, at *3 (E.D.N.Y. July 19, 2016); *Freedom Mortg. Corp. v. Elmore-Hernandez*, No. 18-CV-1840 (DRH) (SIL), 2019 WL 2779320, at *5 (E.D.N.Y. May 8, 2019), *CIT Bank, N.A. v.*

---

[2] This includes $1,628.95 in principal and interest, and an escrow payment of $879.53. (Pl's Objections to R&R ¶ 4.)

*Elliot*, No. 15-CV-4395 (JS) (ARL), 2019 WL 2436212, at *4 (E.D.N.Y. Feb. 5, 2019). Plaintiff has thus not demonstrated entitlement to these payments either.

Finally, Plaintiff states that it "should also be awarded . . . an additional $140.00 in costs," but does not provide any basis for such amount. (Objections to R&R ¶ 5.) This figure represents the difference between the $900.00 in costs that the Plaintiff initially sought, and the $760.000 that the R&R recommended awarding. (*See* Statement of Damages at 1-2; R&R at 12.) The R&R's award of $760.00 includes a $400.000 filing fee, for which it took judicial notice, and $360.00 shown in invoices for process servers. (*See* R&R at 12; Statement of Damages at 4-6.)[3] The court agrees with this conclusion, and thus will defer to the magistrate.

The court reviews the remaining portions of the R&R regarding damages for clear error. The court sees no error in Magistrate Judge Bloom's recommendations, but it takes issue with accrual of $37.50 per day prejudgment interest while the federal foreclosure moratorium was in place. On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which allowed for forbearance on federally backed mortgage loans for borrowers experiencing financial hardship due to the pandemic. Pub. L. No. 116-136, § 1102, 134 Stat. 281 (2020). The applicable section of the CARES Act provided forbearance for "interest beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract." *Id.* at 490 (codified at 15 U.S.C. § 9056.) This moratorium went into effect on March 18, 2020. *Id.* at 491. The U.S. Department of Housing and Urban Development extended the moratorium continuously until July 31, 2022. *See* U.S. Dep't of Hous. and Urb.

---

[3] The individual process serving invoices were for $150.00, $105.00, and $105.00, which totals $360.00. (Statement of Damages at 4-6.)

Dev., Mortgagee Letter 2020-4 (March 18, 2020); U.S. Dep't of Hous. and Urb. Dev., Mortgagee Letter 2021-15 (June 15, 2021).

After Magistrate Judge Bloom issued the R&R, Plaintiff continued to request extensions of time to file objections or supplements the grounds that "the subject mortgage loan is subject to the [federal foreclosure moratorium.]" (*See* First Motion for Extension of Time (Dkt. 21); *see also* Second Motion for an Extension of Time (Dkt. 22); Third Motion for an Extension of Time (Dkt. 23); Fourth Motion for an Extension of Time (Dkt. 24); Fifth Motion for an Extension of Time (Dkt. 25); Sixth Motion for an Extension of Time (Dkt. 26).) Magistrate Judge Bloom granted each extension, expressly referring to the federal foreclosure moratorium in one order doing so. (*See* June 29, 2021 Text Order.)

The court finds that Plaintiff is not entitled to recover prejudgment interest for the period that the CARES Act foreclosure moratorium was in place. Though Defendant King has not appeared to claim hardship under the CARES Act, Plaintiff stated that "the subject loan is subject to the moratorium" and repeatedly cited the moratorium as a basis to delay filing objections to the R&R. The $37.50 per day prejudgment interest is plainly a form of "interest beyond the amounts scheduled or calculated as if the borrower made all contractual payment" that the CARES Act suspended. Pub. L. No. 116-136, § 1102, 134 Stat. 281, 490 (2020). In this context, Plaintiff has failed to establish that it was entitled to prejudgment interest while the foreclosure moratorium was in place. *See Credit Lyonnais Secs. (USA), Inc. v.*

*Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (noting that a plaintiff at default judgment must prove damages with reasonable certainty).[4]

Accordingly, Plaintiff will be entitled to recover prejudgment interest at a rate of $37.50 per day from December 6, 2019 through the entry of judgment, with the exception of the period from March 18, 2020 to July 31, 2021. The R&R's findings regarding damages are thus ADOPTED in part.

## IV. CONCLUSION

The court enters default judgment against Defendant King and awards damages in the following amounts: $288.165.51 for the unpaid principal balance due on the Note; $11,512.50 for the interest accrued on the Note from February 1, 2019 through December 5, 2019; prejudgment interest at a rate of $37.50 per day, accruing in the manner described above; $1,196.13 in late charges; and $760.00 in costs.

The court also enters default judgment against Defendants New York City Environmental Control Board, New York City Parking Violations Bureau, and New York City Transit Adjudication Bureau. Their interests in the Property are foreclosed.

Finally, the court orders foreclosure and sale of the Property located at 110-48 176th Street, Jamaica, New York 11433. Stephanie S Goldstone, Esq. shall be appointed as referee for the foreclosure and sale. If Plaintiff wishes for a different referee to

---

[4] Plaintiff's Third and Sixth Motions for Extensions also reference the New York State foreclosure moratorium. (*See* Third Motion for an Extension of Time; Sixth Motion for an Extension of Time.) In both instances, Plaintiff expressly disclaimed knowledge of whether Defendant King was eligible for relief under the New York State foreclosure moratorium. (*See* Third Motion for an Extension of Time; Sixth Motion for an Extension of Time.) The court will thus not weigh whether the New York State foreclosure moratorium barred accrual of prejudgment interest while it was in place.

be appointed, it must make such a request upon the court within fourteen days of entry of this order. Plaintiff must also serve a copy of this order and the R&R on the Defendants at their last known addresses and to file proof of service with the Court.

SO ORDERED.

Dated:     Brooklyn, New York
           May 17, 2023

                                    s/Nicholas G. Garaufis
                                    _____
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
FREEDOM MORTGAGE CORPORATION,

                    Plaintiff,

     -against-

MECHELLE KING, NEW YORK CITY
ENVIRONMENTAL CONTROL
BOARD, NEW YORK CITY PARKING
VIOLATIONS BUREAU, and NEW
YORK CITY TRANSIT
ADJUDICATION BUREAU,

                  Defendants.
-------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**19 CV 4833 (NGG)(LB)**

**BLOOM, United States Magistrate Judge:**

       Plaintiff, Freedom Mortgage Corporation ("Freedom"), brings this diversity action against defendants, Mechelle King, the New York City Environmental Control Board ("ECB"), the New York City Parking Violations Bureau ("PVB"), and the New York City Transit Adjudication Bureau ("TAB"), seeking to foreclose on a mortgage encumbering certain real property located at 110-48 176th Street, Jamaica, New York 11433 (the "Property") pursuant to New York Real Property Actions and Proceedings Law ("RPAPL") Article 13. When defendants failed to respond to the complaint after being served with process, plaintiff requested and the Clerk of Court noted entry of defendants' default. ECF Nos. 8–11. Plaintiff now moves for a default judgment. ECF No. 16. The Honorable Nicholas G. Garaufis referred plaintiff's instant motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). It is respectfully recommended that plaintiff's motion for a default judgment should be granted in part and denied in part, and that plaintiff should be awarded damages and additional relief as set forth herein. Plaintiff should also be granted leave to supplement the record within fourteen days of this Report.

## BACKGROUND[1]

On June 3, 2014, King executed and delivered a promissory note ("Note") to Continental Home Loans Inc. in the principal amount of $312,270.00. ECF No. 1, Complaint ("Compl.") ¶ 10; ECF No. 1-3 at 3. As security for payment of the Note, King also executed a mortgage ("Mortgage") for the same amount on the Property, which was recorded with the City Register of the City of New York, Queens County ("City Register") on June 13, 2014. Compl. ¶ 11. The Mortgage was assigned to plaintiff on March 23, 2016 and recorded with the City Register on April 11, 2016. Id. ¶ 12; ECF No. 1-3 at 13–14.

Plaintiff alleges that King "failed to make payment[s] in accordance with the terms of the Note and Mortgage by not making the payment that was due on March 1, 2019 and subsequent payments." Compl. ¶ 13. Plaintiff alleges that King owes $288,165.51 plus interest which began accruing on February 1, 2019, in addition to other assessments. Id. ¶ 14.

## PROCEDURAL HISTORY

Plaintiff commenced this foreclosure action against defendants on August 22, 2019. ECF No. 1. Summonses were returned executed on defendants on October 2, October 18, and October 21, 2019. ECF Nos. 8–11. When defendants failed to respond to plaintiff's complaint after being properly served, plaintiff requested and the Clerk of Court noted entry of the defendants' default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. ECF No. 13. Plaintiff now moves for a default judgment against defendants pursuant to Rule 55(b)(2). ECF No. 16, ECF No. 17, Plaintiff's Memorandum of Law in Support of Motion for Default Judgment Pursuant to Fed. R. Civ. P. 55. Plaintiff's motion attaches the CPLR §3012-b Certificate of Merit (which includes a

---

[1] The facts are drawn from the uncontested allegations in plaintiff's complaint, as well as documents incorporated by reference, and are taken as true for the purposes of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment).

copy of the Note, Mortgage, and Assignment of Mortgage), ECF No. 18-2; plaintiff's affidavit ("Thomas Aff.") which includes a copy of the notice and filing requirements set forth in the RPAPL §§ 1304 and 1306, ECF No. 18-6; a statement of damages, ECF No. 18-7; and a proposed Judgment of Foreclosure and Sale, ECF No. 18-8.

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A plaintiff may then move for a default judgment against a defendant. Fed. R. Civ. P. 55(b)(2). If a defendant fails to appear or move to set aside the default under Rule 55(c), the Court may enter a default judgment on plaintiff's motion. Id.

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); see also Finkel, 970 F. Supp. 2d at 119. Even though the well-pleaded allegations are deemed admitted, the Court has a "responsibility to ensure that the factual

allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (citation omitted). If the unchallenged facts establish defendant's liability, the Court then determines the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

Under New York law, a plaintiff in a foreclosure action must demonstrate "the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment" on the loan secured by the mortgage.[2] Gustavia Home, LLC v. Bent, 321 F. Supp. 3d 409, 414 (E.D.N.Y. 2018) (citations omitted); see also United States v. Leap, No. 11 CV 4822 (DRH)(WDW), 2014 WL 1377505, at *2 (E.D.N.Y. Feb. 18, 2014), adopted by, 2014 WL 1383139 (E.D.N.Y. Apr. 8, 2014) ("In the usual course, once a plaintiff mortgagee in a foreclosure action has established a *prima facie* case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor.") (citations omitted).

Furthermore, a plaintiff must also demonstrate compliance with the notice and filing requirements of RPAPL §§ 1304 and 1306. N.Y. RPAPL § 1306(1) ("Each lender . . . shall file with the superintendent of financial services [the information set forth in RPAPL § 1306(2)] . . . as a condition precedent" to initiating any foreclosure proceeding); OneWest Bank, N.A. v. Simon, No. 14 CV 6622 (RJD), 2019 WL 1320275, at *11 (E.D.N.Y. Mar. 22, 2019) (Compliance with

---

[2] The Mortgage at issue herein provides that "[t]his Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located[,]" which is New York. ECF No. 1-3 at 10.

4

Section 1304 "is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition.") (citation omitted).

## DISCUSSION

### I.  Foreclosure and Sale

Plaintiff's allegations in the complaint and the attached exhibits establish that it is entitled to a default judgment. Plaintiff has filed the Note, the Mortgage, the assignment to plaintiff, and defendants' default history to establish a *prima facie* case. ECF Nos. 18-1–18-6. Plaintiff alleges that King "failed to make payment[s] in accordance with the terms of the Note and Mortgage by not making the payment that was due on March 1, 2019 and subsequent payments." Compl. ¶ 13; Thomas Aff. 4–5. King's default triggered plaintiff's right to accelerate the loan to require full payment of the $288,165.51, the outstanding principal, with 4.750% annual interest. Compl. ¶¶ 13–14; ECF Nos. 1-3 at 3, 10. Plaintiff has also complied with the pre-foreclosure notice and filing requirements of RPAPL §§ 1304[3] and 1306 requiring certain information to be sent to defendants and filed with the Superintendent of Financial Services.[4] Thomas Aff. 2, 10–34. King

---

[3] Plaintiff states that the RPAPL § 1304 90-day pre-foreclosure notice was sent to King at "11048 176th St Jamaica, NY" on April 8, 2019. Thomas Aff. at 2. However, the affidavit contains a typographical error as the notice was sent to King's address, "**110-48** 176th St Jamaica, NY." Id. at 10. This typographical error in the affidavit does not effect the notice, which was correct.

[4] In CIT Bank N.A. v. Schiffman, the Second Circuit found a "lack of guidance" regarding RPAPL §§ 1304 and 1306 and certified two questions to the New York Court of Appeals asking: "(1) "Where a foreclosure plaintiff seeks to establish compliance with RPAPL § 1304 through proof of a standard office mailing procedure, and the defendant both denies receipt and seeks to rebut the presumption of receipt by showing that the mailing procedure was not followed, what showing must the defendant make to render inadequate the plaintiff's proof of compliance with § 1304?" and (2) "Where there are multiple borrowers on a single loan, does RPAPL § 1306 require that a lender's filing include information about all borrowers, or does § 1306 require only that a lender's filing include information about one borrower?" 948 F.3d 529, 535–37(2d Cir. 2020).

In similar foreclosure cases, Courts have either stayed the case until the Court of Appeals answers the certified questions in Schiffman or granted the motion for default judgment and ordered the foreclosure and sale of the underlying property. Compare Miss Jones, LLC v. Viera, No. 18 CV 1398 (NGG)(SJB), 2020 WL 1527141 (E.D.N.Y. Mar. 31, 2020) (staying the case); Freedom Mortg. Corp. v. Powell, No. 2:18 CV 4265 (ENV)(CLP), ECF No. 20 (E.D.N.Y. Feb. 13, 2020) (recommending that the case should be stayed); Freedom Mortg. Corp. v. Monteleone, No. 19 CV 1410 (RJD)(SJB), ECF No. 20 (E.D.N.Y. Jan. 31, 2020) (staying the case); with Freedom Mortg. Corp. v.

has neither responded to the complaint nor rebutted plaintiff's *prima facie* showing that it is entitled to a default judgment. ECF No. 18-5.

Plaintiff also requests that Stephanie S. Goldstone, Esq. be appointed as referee "to sell the Property . . . in accordance with . . . RPAPL Article 13 [as outlined in the proposed Judgment of Foreclosure and Sale.]" Compl. at 5; ECF No. 18-8 at 2. The appointment of a referee should be allowed where the plaintiff has "established a *prima facie* case[.]" E. Sav. Bank, FSB v. Evancie, No. 13-CV-00878 (ADS)(WDW), 2014 WL 1515643, at *4 (E.D.N.Y. Apr. 18, 2014); see also Freedom Mortgage v. Phillip, No. 19 CV 1215 (RJD)(LB), at Electronic Order dated Apr. 8, 2020 (E.D.N.Y. Apr. 8, 2020) (appointing Stephanie S. Goldstone, Esq. to be the referee in a similar context); OneWest Bank, NA v. Raghunath, No. 14-CV-3310 (RJD)(MDG), 2015 WL 5772272, at *7 (E.D.N.Y. Sept. 8, 2015), adopted by, 2015 WL 5774784 (E.D.N.Y. Sept. 29, 2015) (same). Accordingly, I respectfully recommend that Stephanie S. Goldstone, Esq. should be appointed to be the referee to conduct the sale of the property under the terms set forth in the proposed Judgment of Foreclosure and Sale. ECF No. 18-8.

## II.    Non- Mortgagor Defendants

Plaintiff also names the ECB, PVB, and the TAB as defendants as they are "holder[s] of a lien encumbering the Property, which is subject and subordinate to Plaintiff's mortgage." Compl. ¶¶ 4–6. "New York [RPAPL] § 1311 provides that the necessary parties to a mortgage foreclosure action include: '[e]very person having any lien or incumbrance upon the real property which is

---

Phillip, No. 19 CV 1215 (RJD)(SJB), Electronic Order dated Apr. 8, 2020 (E.D.N.Y. Apr. 8, 2020) (adopting recommendation to grant default judgment, foreclosure, and sale of the underlying property); Windward Bora LLC v. Thompson, No. 18 CV 1811 (NGG)(RML), 2020 WL 1242828 (E.D.N.Y. Mar. 16, 2020) (same); see also Wilmington PT Corp. v. Parker, No. 2:19 CV 2380 (DRH)(AKT), ECF No. 13 (E.D.N.Y. Apr. 8, 2020) (adopting recommendation to grant default judgment as to liability, but deferring damages until plaintiff supplements the record). Given the facts of this case, a stay is not necessary.

claimed to be subject and subordinate to the lien of the plaintiff.'" Bank of Am., N.A. v. 3301 Atl., LLC, No. 10 CV 5204 (FB), 2012 WL 2529196, at *14 (E.D.N.Y. June 29, 2012) (quoting N.Y. RPAPL § 1311(3)). "This rule 'derives from the underlying objective of foreclosure actions—to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale.'" Id. (citations omitted). To establish liability as to a non-mortgagor defendant, plaintiff must allege "'nominal liability' — that any judgments the non-mortgagor defendant has against the mortgagor defendant, if asserted as a lien on the mortgage property, is subordinate to the plaintiff's lien." Courchevel 1850 LLC v. Rodriguez, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *7 (E.D.N.Y. May 22, 2019) (citation omitted); Gustavia Home, LLC v. Lawrence, No. 16-CV-4010 (SJ)(SMG), 2017 WL 4404434, at *4 (E.D.N.Y. June 22, 2017) ("Entry of default judgment against a non-mortgagor defendant is generally appropriate where the complaint alleges 'nominal liability.'") (citation omitted).

Here, the complaint contains well-pleaded allegations of nominal liability on the part of the non-mortgagors ECB, PVB, and TAB. Compl. ¶¶ 4–7, Compl. at 10–16 (attaching ECB, PVB, and TAB liens). Therefore, it is respectfully recommended that a default judgment should be entered against defendants ECB, PVB, and TAB. See CIT Bank v. Dambra, No. 14 Civ. 3951 (SLT)(VMS), 2015 WL 7422348, at *6 (E.D.N.Y. Sept. 25, 2015), adopted by, 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015) ("Plaintiff supported its allegations of liens encumbering the Property with title search documents allegedly showing monies owed by [the mortgagor defendants] to the [non-mortgagor defendant] . . . . These supported allegations are sufficient to satisfy the requirement under RPAPL § 202 for 'detailed facts' related to the interest in or lien on the property.") (citations omitted); cf. CIT Bank, N.A. v. Metcalfe, No. 15-CV-1829 (MKB)(JO), 2017 WL 3841843, at *6–7 (E.D.N.Y. Aug. 17, 2017), adopted by, 2017 WL 3841852 (E.D.N.Y.

Sept. 1, 2017) ("Without 'detailed facts showing the particular nature of the interest in or lien on the real property,' the conclusory allegations of the Complaint do not establish a claim against [the non-mortgagor defendant] under New York law.") (citing N.Y. RPAPL § 202-a).

## III.    Damages

It is well established that a default constitutes an admission of well-pleaded factual allegations in the complaint, except those relating to damages. Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."); see also Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). On a motion for a default judgment, the plaintiff has the burden to prove the amount of damages with a "reasonable certainty." Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, 109 F.3d at 111). An evidentiary hearing is not required; the Court may rely on detailed affidavits and other documentary evidence to determine damages. Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991).

### a.  Damages Due Under the Note

Plaintiff seeks $307,533.74 in damages due under the Note: $288,165.51 in the unpaid principal balance; $12,547.26 in interest at a rate of 4.750% per year from February 1, 2019 through December 5, 2019; $1,293.85 in late charges; $4,037.95 in tax disbursements; $1,820.18 in Primary Mortgage Insurance/Mortgage Insurance Premium disbursements ("PMI/MIP"); and

$100.00 for the cost of property inspections and preservation costs.[5] ECF No. 18-7; Thomas Aff. at 2–3.

In support of its claim for damages, plaintiff submits an affidavit from Lisa K. Thomas, FCI Specialist III,[6] who had "personal knowledge of the operation of and the circumstances surrounding the preparation, maintenance, distribution, and retrieval of records in plaintiff's record keeping systems." Thomas Aff. at 1. Thomas's affidavit includes a breakdown of plaintiff's damages. Id. at 2–3.

### i. Unpaid Principal Balance

Plaintiff requests an unpaid principal balance of $288,165.51. ECF No. 18-7; Thomas Aff. at 2. King agreed to pay $312,270.00 in principal. ECF No. 1-3 at 3; Thomas Aff. at 1. In the event of defendant's default, plaintiff may "require immediate payment in full of all sums secured" by the loan. ECF No. 1-3 at 10. Thomas certifies that at the time of King's default on March 1, 2019, the outstanding principal balance was $288,165.51. Thomas Aff. at 2. Plaintiff's allegations and the supporting documents establish that defendants failed to make payments on the unpaid principal balance past February 1, 2019. Compl. ¶ 14; Thomas Aff. 1–9; see also Happy Homes, LLC v. Jenerette-Snead, No. 15-CV-01788 (MKB)(RML), 2016 WL 6599826, at *5 (E.D.N.Y. Nov. 7, 2016) (collecting cases where the mortgage and plaintiff's affidavit were sufficient to establish damages and cases where courts requested additional records); Raghunath, 2015 WL 5772272, at * 4 (plaintiff's unopposed affidavits stating the amount of the unpaid principal were sufficient to establish damages); United States v. Watts, No. 13-CV-3211 (ADS)(WDW), 2014 WL 4275628, at *2 (E.D.N.Y. May 28, 2014), adopted by, 2014 WL 4293815 (E.D.N.Y. Aug. 28,

---

[5] Plaintiff does not explain why King is credited with $431.01 in its request for $307,533.74 in damages due under the Note. ECF No. 18-7.
[6] Plaintiff does not state what the abbreviation "FCI" stands for.

2014) (plaintiff's unopposed affidavit stating the outstanding principal, along with a declaration of regularity and review of "all relevant documents," was sufficient to establish damages). Therefore, the Court recommends that plaintiff should be awarded a judgment against King in the amount of **$288,165.51** for the unpaid principal balance.

### ii. Interest

Plaintiff requests $12,547.26 in interest on the unpaid principal balance from February 1, 2019 through December 5, 2019. ECF No. 18-7; Thomas Aff. at 2. The Note provides that interest accrues on the unpaid principal balance at a rate of 4.750% per year. Compl. ¶ 14; Thomas Aff. at 2; ECF No. 1-3 at 3. Applying the 4.750% annual interest rate to the unpaid principal balance of $288,165.51, interest accrues at $37.50 per day.[7] ECF No. 18-8 at 2. There are 307 days between February 1, 2019 and December 5, 2019. Accordingly, I respectfully recommend that plaintiff should be awarded **$11,512.50** in interest from February 1, 2019 through December 5, 2019, plus additional interest at a rate of **$37.50 per day** from December 6, 2019 until the Court enters judgment.[8]

### iii. Late Charges

Plaintiff seeks $1,293.85 in late charges. ECF No. 18-7; Thomas Aff. at 2. The Note states that if a monthly payment is more than fifteen days late, defendant must pay a late charge of 4.000% on the amount overdue. ECF No. 1-3 at 3. King was assessed late charges for April 2018 through July 2019. Thomas Aff. at 6–7. Plaintiff's records demonstrate that four late payments

---

[7] "Daily interest is calculated as follows: daily interest rate = (outstanding principal * interest rate per annum)/365 days." CIT Bank, N.A. v. Seeram, No. 16 CV 2608 (RRM)(LB), 2017 WL 8220204, at *5 n.11 (E.D.N.Y. Feb. 15, 2017), adopted by, 2018 WL 1308003 (E.D.N.Y. Mar. 13, 2018) (citation omitted). Here, the daily interest rate is calculated as follows: ($288,165.51 * .0475) / 365 = $37.50 per day.

[8] Although plaintiff correctly calculated the daily interest rate of $37.50, ECF No. 18-8 at 2, it incorrectly requests $12,547.26 in unpaid interest, ECF No. 18-7. The Court multiplied the $37.50 daily interest rate by the 307 days between February 1, 2019 and December 5, 2019 to conclude that plaintiff is entitled to $11,512.50 in unpaid interest.

were paid and King has a remaining balance of $1,196.13. Id. Accordingly, I respectfully recommend that plaintiff should be awarded **$1,196.13** in late charges. Plaintiff should be granted leave to supplement its request for the additional $97.72 in late charges if it chooses to do so within fourteen days of this Report.

### iv.  Other Costs and Disbursements

Plaintiff also seeks to recover $4,037.95 in tax disbursements, $1,820.18 in PMI/MIP, and $100.00 in property inspection and preservation costs, for a total of $5,958.13. ECF No. 18-7; Thomas Aff. at 2–3. King is liable to plaintiff for "taxes and assessments[,]" "leasehold payments[,]" and premiums for all insurance, and in the event of a default, for "all additional allowances allowed by law[.]" ECF No. 1-3 at 4, 8–9, 11. Although plaintiff may be entitled to the amounts requested, plaintiff fails to properly support its requests.[9] Thomas Aff. at 2–3. These conclusory allegations are insufficient to justify an award for the requested amounts. Therefore, plaintiff's request for $5,958.13 regarding unpaid tax disbursements, PMI/MIP, and property inspection and preservation costs should be denied without prejudice. Plaintiff should be granted leave to supplement its request for these amounts within fourteen days of this Report. See Phillips, No. 19 CV 1215 (RJD)(LB), at Electronic Order dated Apr. 8, 2020 (denying without prejudice plaintiff's unsubstantiated request to award $5,017.60 in unpaid hazard insurance disbursements, tax disbursements, and PMI/MIP); Freedom Mortg. Corp. v. Elmore-Hernandez, No. 18-cv-1840 (DRH)(SIL), 2019 WL 2779320, at *5 (E.D.N.Y. May 8, 2019), adopted by, 2019 WL 2775620 (E.D.N.Y. July 2, 2019) (denying without prejudice plaintiff's unsubstantiated request to award $5,356.20 for taxes, insurance costs, and property inspections and preservation costs).

---

[9] Although plaintiff attaches a document referencing "Prop Inspection Fee," it is unclear what amount King owes. Thomas Aff. at 9.

### b. Attorney's Costs

Plaintiff seeks $900.00 in attorney's costs.[10] ECF No. 18-7 at 2. Plaintiff is entitled to be reimbursed for "all costs and disbursements[.]" ECF No. 1-3 at 11. "Courts typically award 'those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" Kindle v. Dejana, 308 F. Supp. 3d 698, 705 (E.D.N.Y. 2018) (citation omitted). "However, the party seeking reimbursement of its costs carries the burden of providing the Court adequate substantiation in the form of receipts and other documents[.]" Id.

Specifically, plaintiff requests $400.00 for filing the instant civil case, $465.00 for the cost of service of process, and $35.00 for the clerk's fee for filing the Notice of Pendency pursuant to C.P.L.R. § 8018(d)(6). ECF No. 18-7 at 2. The Court may take judicial notice of the $400.00 for the civil case filing fee. See Elmore-Hernandez, 2019 WL 2779320, at *6 (taking judicial notice of the filing fee). Furthermore, plaintiff supports its request for the cost of service of process with three invoices which total $360.00. ECF No. 18-7 at 4–6. Accordingly, plaintiff should be awarded **$760.00** for the civil case filing fee and the cost of service of process (for the three invoices filed). However, plaintiff's request for the remaining $105.00 for service of process and for $35.00 for the clerk's fee should be denied with leave for plaintiff to supplement the request within fourteen days of this Report.

### CONCLUSION

For the reasons set forth above, it is respectfully recommended that plaintiff's motion for a default judgment against defendant Mechelle King should be granted in part and denied in part as follows: plaintiff should be awarded **$288,165.51** for the unpaid principal balance due on the Note; **$11,512.50** for the interest accrued on the Note from February 1, 2019 through December

---

[10] Although plaintiff is entitled to attorney's fees in light of King's default, ECF No. 1-3 at 11, plaintiff's instant motion did not make such a request. Accordingly, the Court should not award attorney's fees at this time.

5, 2019, as well as any additional interest that accrues from December 6, 2019 until the entry of judgment at a rate of **$37.50 per day**; **$1,196.13** in late charges; and **$760.00** in costs.

Plaintiff's request for an additional $97.72 in late charges, $5,958.13 in unpaid tax disbursements, PMI/MIP, and property inspection and preservation costs, as well as an additional $140.00 in costs, should be denied without prejudice with leave to supplement within fourteen days of this Report.

Furthermore, the Court should enter a default judgment in favor of plaintiff and against defendants New York City Environmental Control Board, New York City Parking Violations Bureau, and New York City Transit Adjudication Bureau to foreclose their interests in the Property.

I also recommend that the Court should order the foreclosure and sale of the instant Property located at 110-48 176th Street, Jamaica, New York 11433, and that Stephanie S. Goldstone, Esq. should be appointed as the referee for the foreclosure and sale. Plaintiff is hereby ordered to serve a copy of this Report on the defendants at their last known addresses and to file proof of service with the Court forthwith.

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: April 28, 2020
      Brooklyn, New York

14